IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No.  08-11525 (BLS) |
| SEMCRUDE, L.P., et al., | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Docket Reference No. 8495 |
| ———————————————— | ) | |
| BETTINA WHYTE, LITIGATION | ) | |
| TRUSTEE, on behalf of the Litigation | ) | |
| Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No.  09-50189 (BLS) |
| | ) | |
| THOMAS L. KIVISTO, GREGORY C. | ) | Adv. Docket Reference No.  216 |
| WALLACE, WESTBACK | ) | |
| PURCHASING CO., LLC, BRENT | ) | |
| COOPER, KEVIN L. FOXX | ) | |
| and ALEX G. STALLINGS, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

Bonnie Glantz Fatell
David Dorney
BLANK ROME, LLP
1201 Market Street, Suite 800
Wilmington, Delaware 19801

Richard Werder, Jr.
Susheel Kirpalani
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Flr.
New York, New York 10010

R. Brian Timmons
David M. Grable
Eric D. Wilson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Flr.
Los Angeles, California 90017

*Counsel for Bettina M. Whyte as Trustee
of the SemGroup Litigation Trust*

David B. Stratton
James C. Carignan
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19801

Emily Nicklin
Gabor Balassa
Joshua Z. Rabinovitz
KIRKLAND & ELLIS LLP
300 N. La Salle Street
Chicago, Illinois 60654

*Counsel for PricewaterhouseCoopers
LLP*

Donald J. Detweiler
Dennis A. Meloro
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801

Paul Bessete
Michael J. Biles
Jesse Z. Weiss
Kimberly G. Davis
GREENBERG TRAURIG, LLP
300 West Sixth Street, Suite 2050
Austin, Texas 78701

*Counsel for Defendant Thomas L. Kivisto*

Joanne P. Pinckney
PINCKNEY, HARRIS & WEIDINGER, LLC
1220 N. Market Street, Suite 950
Wilmington, Delaware 19382

Orin L. Harrison III
Lisa S. Gallerano
AKIN GUMP STRAUSS HAUER & FELD, LLP
1700 Pacific Ave., Suite 4100
Dallas, Texas 75201

*Counsel for Defendant Gregory C. Wallace*

David J. Teklits
Curtis S. Miller
Kevin M. Coen
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street,
P.O. Box 1347
Wilmington, Delaware 19899

Theodore W. Daniel
Karl G. Dial
FULBRIGHT & JAWORSKI LLP
2200 Ross Ave., Suite 2800
Dallas, Texas 75201

*Counsel for Defendant Brent Cooper*

Bruce W. McCullough
BODELL, BOVE, GRACE &
VAN HORN, P.C.
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, Delaware 19899

Barry Flynn
GORDON & REES, LLP
3D/International Tower
1900 West Loop South, Suite 1000
Houston, Texas 77027

*Counsel for Defendant Kevin L. Foxx*

John M. Seaman
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

*Counsel for Defendant Alex G. Stallings*

2

## OPINION[1]

Before the Court is the *Joint Motion of Bettina Whyte As Trustee for the SemGroup Litigation Trust, and Thomas L. Kivisto, Gregory C. Wallace, Brent Cooper, Kevin L. Foxx, and Alex G. Stallings For Order Approving Settlement* [Adv. Docket No. 216] (the "Settlement Motion").[2] On September 29, 2010, PricewaterhouseCoopers LLP ("PWC") filed an objection to the Settlement Motion [Adv. Docket No. 224] (the "Objection"). On September 30, 2010, the Court held a hearing on the Motion and the Objection (the "Hearing"). At the conclusion of the Hearing, the Court requested additional briefing from the parties on the issues raised in the Objection, which the parties later submitted. The Court has considered the parties' positions and for the following reasons, the Court will grant the Settlement Motion in full and overrule the Objection.

## I. BACKGROUND

On July 22, 2008 and October 17, 2008 (the "Petition Date"), SemCrude, L.P. and certain of its affiliates (together, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On August 5, 2008, the Office of the United States Trustee (the "UST") appointed a committee of the Debtors' unsecured creditors (the "Committee"). On September 10, 2008, the Court entered an Order [Docket No. 1295] directing the UST to appoint an examiner and on October 14, 2008, the UST appointed Louis J. Freeh, Esquire (the "Examiner") to such position [Docket No. 1752]. The Examiner reviewed more than 300,000 documents and interviewed more than 100 people, including representatives of PWC. On April 15, 2009, the

---

[1]    This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2]    References herein to "Adv. Docket No." relate to docket items in Case No. 09-50189 (BLS). References herein to "Docket No." relate to docket items in Case No. 08-11535 (BLS).

Examiner submitted a 258-page report [Docket No. 3701] (the "Examiner's Report") containing detailed findings regarding the Debtors' trading strategies, the creation and structure of the Debtors' master limited partnership business model, certain insider transactions, and potential causes of action against the Debtors' former officers, directors, and employees. [See Docket No. 3701.]

Prior to the submission of the Examiner's Report, on February 18, 2009, the Committee initiated the above-captioned adversary proceeding (the "Adversary") by filing a complaint (as amended, the "Complaint").[3] On October 28, 2009, the Court entered an Order [Docket No. 6347] approving the Debtors' joint plan of reorganization [Docket No. 5808] (the "Plan"). The Plan provided for the creation of a litigation trust (the "Litigation Trust") and vested such trust with certain litigation claims, including the claims that form the basis of the Adversary. As a result, on December 16, 2009, the Court entered an Order [Adv. Docket No. 118] substituting Bettina Whyte as trustee of the Litigation Trust (the "Trustee") for the Committee as the plaintiff in the Adversary.

By the Complaint, the Trustee alleges thirty counts against Thomas L. Kivisto, Gregory C. Wallace, Brent Cooper, Kevin L. Foxx, Alex G. Stallings (collectively, the "Individual Defendants"), and Westback Purchasing Co., LLC ("Westback," and together with the Individual Defendants, the "Defendants") primarily related to the Defendants' involvement with the Debtors' commodities trading, certain interested transactions, and the Debtors' financial and other support of Westback. [See Adv. Docket No. 66.] Generally, the Complaint asserts claims for fraudulent transfer, breach of fiduciary duty, breach of contract, and unjust enrichment. [See id.]

---

[3]    On March 16, 2009, May 15, 2009 and October 5, 2009, the Court entered Orders granting the Committee standing to prosecute the Adversary. [Docket Nos. 3414 and 4205; Adv. Docket No. 65.]

On November 2, 2009, each of the Defendants filed a motion to dismiss the Complaint. The Trustee opposed the motions to dismiss and the Defendants filed replies in support of their motions. On March 3, 2010, the Court heard extensive oral argument on the motions to dismiss and took the matters under advisement.

Following oral argument, on March 29-30, 2010, the Individual Defendants and the Trustee participated in a mediation before the Honorable Nicholas Politan.[4] Thereafter, these parties continued settlement discussions and on June 11, 2010, they reached agreement on the key terms of a settlement, which was subsequently memorialized in the agreement attached as Exhibit A to the Settlement Motion (the "Settlement").

The Settlement is intended to fully and finally resolve all potential or actual claims and disputes between the Individual Defendants and the Trustee (together, the "Settling Parties") related to the facts and circumstances underlying the Complaint. Generally, the Settlement provides that the Individual Defendants will cause $30 million to be paid to the Litigation Trust from the Individual Defendants' director and officer insurance policies and the Settling Parties will agree to mutual releases. In addition, the Settlement is conditioned upon the entry of an order of this Court approving the Settlement, partially lifting the automatic stay, and approving a contribution bar (the "Contribution Bar") that would discharge the Individual Defendants from all liability to any other person for contribution or indemnity relating to the released claims.

PWC is the only party with an unresolved objection to the Settlement Motion. By its Objection, PWC argues that the Contribution Bar does not comport with due process principles and may affect PWC's ability to seek contribution from the Individual Defendants in the event that PWC is found liable in separate litigation between PWC and the Trustee currently pending

---

[4]     The Court expresses its strong appreciation for Judge Politan's considerable efforts in this matter.

in Oklahoma federal court (the "Oklahoma Litigation").  PWC contends that the Contribution

Bar should not be approved because it would or could operate to extinguish the rights of entities

who are not parties to the Adversary and who were not involved in negotiating the Settlement.

The Settling Parties disagree and argue that PWC has been afforded sufficient due

process through its participation in this proceeding.  Moreover, argue the Settling Parties, due

process is not an issue because the Contribution Bar does not deprive PWC of any rights.  The

Settling Parties contend that pursuant to Oklahoma law, PWC could not maintain a direct

contribution claim against the Individual Defendants, but would be limited to seeking setoff or

judgment reduction for the $30 million to be paid pursuant to the Settlement.  As the Settlement

contains a provision preserving any state law setoff or judgment reduction rights of potential

contribution claimants, the Settlement does not appear to deprive PWC of any material

contribution-related rights. Accordingly, due process issues do not arise and the Settlement

should be approved.

## II.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and

(b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of

this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (G).

## III.  STANDARD OF REVIEW

Federal Rule of Bankruptcy Procedure 9019 provides that "[o]n motion . . . and after

notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P.

9019(a).  Settlement approval pursuant to Bankruptcy Rule 9019 is within the Court's discretion.

Key3Media Group, Inc v. Pulver.com, Inc. (In re Key3Media Group, Inc.), 336 B.R. 87, 92

(Bankr. D. Del. 2005).  Although the Court need not be convinced that the Settlement is the

optimal outcome, the Court must determine that the Settlement is "fair and equitable" and falls

above the lowest point in the range of reasonable litigation possibilities. <u>In re Nutraquest, Inc.</u>, 434 F.3d 639, 644-46 (3d Cir. 2006); <u>In re Coram Healthcare Corp.</u>, 315 B.R. 321, 330 (Bankr. D. Del. 2004).

In determining whether a settlement is above the lowest point in the range of reasonableness, the Court must consider: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." <u>Meyers v. Martin (In re Martin)</u>, 91 F.3d 389, 393 (3d Cir. 1996).

## IV. <u>DISCUSSION</u>

At the Hearing on the Settlement Motion, the Court made findings on the record regarding the fairness of the Settlement. Although the Court left open the discrete contribution bar issues raised by PWC, the Court otherwise found that the settlement was "in good faith" and "the debtors have carried their burden under Bankruptcy Rule 9019." Settlement Hr'g Tr. 49-51, Sept. 30, 2010. It is undisputed that the Settlement is the result of arm's length good faith negotiations among the Settling Parties. The Settlement is also unanimously supported by the governing board of the Litigation Trust, which is comprised of representatives of the Debtors' unsecured and lender creditors. In addition, given the complexity of the Adversary, the uncertainty of the Trustee's success on the merits, and the monetary benefits of the Settlement for the Debtors' creditors, the Settlement clearly falls above the lowest point in the range of reasonableness and is fair and equitable. Accordingly, the only issue remaining before the Court is whether the Settlement's Contribution Bar can and should be approved.

PWC argues that due process principles preclude the Court from entering an order that may affect its contribution rights in the Oklahoma Litigation. PWC argues that, as an uninvolved non-party to the Adversary, its Oklahoma state law rights cannot be altered by this

7

Court without offending due process.  As a threshold matter, the Court is not convinced that the

Contribution Bar does in fact deprive PWC of any rights under Oklahoma law.  In addition, the

Court is satisfied that PWC's involvement in these proceedings by (1) its submission of an

objection to the Settlement Motion, (2) its presentation of oral argument at the Hearing on the

Settlement Motion, and (3) its submission of supplemental briefing following the Hearing,

satisfies any due process concerns.

**A.    PWC Has Not Sufficiently Asserted That It Has Cognizable Due Process Rights
Affected By the Contribution Bar.**

      **1.    Due Process Principles Do Not Apply to Inchoate Contribution Rights.**

The due process clause of the Fifth Amendment to the United States Constitution forbids

the deprivation of life, liberty, or property without due process of law.  See U.S. Const., amend.

V; see also, Okla. Const. art II, § 7.  However, "[p]rotected interests in property are normally not

created by the Constitution. Rather, they are created and their dimensions are defined by an

independent source such as state statutes . . . ."  Goss v. Lopez, 419 U.S. 565, 572, 95 S. Ct. 729,

735 (1975) (internal quotations removed).  As a result, the due process clause has been

interpreted to only protect rights that have accrued under applicable law.  See Logan v.

Zimmerman Brush Co., 45 U.S. 422, 430, 102 S. Ct. 1148, 1155 (1982) ("The hallmark of

property [protected by due process principles] . . . is an individual entitlement grounded in state

law, which cannot be removed except 'for cause'."); see also, Snoddy v. Teepak, Inc., 556

N.E.2d 682, 685 (Ill. Ct. App. 1990) ("The protections of the fourteenth amendment apply to

accrued causes of action, but do not apply to unaccrued causes of actions.").

At common law, joint tortfeasors did not have a right to contribution among themselves,

"[t]he rationale being that as between two guilty parties, the law would aid neither."  Nat'l Union

8

Fire Ins. Co. v. A.A.R. W. Skyways, Inc., 784 P.2d 52, 57 (Okla. 1989). In 1978, Oklahoma

enacted a version of the Uniform Contribution Among Tort-Feasors Act (the "UCATA"), which

ameliorates the common law rule and provides limited statutory rights of contribution among

joint tortfeasors.[5] See id.; Moss v. City of Oklahoma City, 897 P.2d 280, 284 (Okla. 1995). The

statute provides, in relevant part:

> (A) When two or more persons become jointly or severally liable
> in tort for the same injury to person or property or for the same
> wrongful death, there is a right of contribution among them even
> though judgment has not been recovered against all or any of them
> except as provided in this section.

> (B) The right of contribution exists only in favor of a tort-feasor
> who has paid more than their pro rata share of the common
> liability, and the total recovery is limited to the amount paid by the
> tort-feasor in excess of their pro rata share. No tort-feasor is
> compelled to make contribution beyond their pro rata share of the
> entire liability.

Okla. Stat. Ann. tit. 12, § 832 (A)-(B) (West 2010). The Oklahoma Supreme Court has

explained that "[s]ubsection 832(A) of the [UCATA] creates the right of contribution among

joint tortfeasors [and] . . . [s]ubsection 832(B) identifies who is entitled to seek contribution."

Barringer v. Baptist Healthcare of Okla., 22 P.3d 695, 698 (Okla. 2001). Accordingly, the plain

language of the statute provides that a right of contribution exists upon an injury by joint

tortfeasors, but that contribution rights are not enforceable until one tortfeasor has paid more

than its pro rata share. See State Farm Mut. Auto. Ins. Co. v. Perry, 104 P.3d 1136, (Okla. Civ.

App. 2004) ("[C]laims for contribution and indemnity . . . do not accrue until defendant's

liability is established."); Woolward v. JLG Indus., Inc., 210 F.3d 1158, 1180 (10th Cir. 2000)

---

[5]     The Trustee has asserted state law claims for professional negligence, breach of fiduciary
duty, and violations of the Oklahoma Accountancy Act in the Oklahoma Litigation. The parties
appear to agree that Oklahoma law should apply to the contribution bar issues and the Court will
apply Oklahoma law to the extent necessary.

(finding that party that settled for less than its pro rata share was not entitled to jury instruction on contribution under the Oklahoma UCATA because the statute only allows parties that have paid more than their pro rata share to seek contribution); but cf. Okla. Gas & Elec. Co. v. Dist. Court, Fifteenth Judicial Dist., Cherokee Cnty., 784 P.2d 61, 67 (Okla. 1989) (In the context of determining whether the right of contribution must be asserted as a compulsory counterclaim, the Oklahoma Supreme Court stated that "[t]he fact that a claim for contribution may not accrue until the judgment's rendition does not bar the earlier assertion of the claim.").

Although there does not appear to be controlling Oklahoma precedent on the issue, courts in other jurisdictions construing similar provisions of the UCATA have determined that a joint tortfeasor does not have a due process protected property interest in UCATA-created contribution rights prior to the tortfeasor's payment of more than its pro rata share. See Troyer v. Adams, 77 P.3d 83, 117 (Haw. 2003) (collecting cases and stating that "courts from other jurisdictions appear to be in agreement that [the right of contribution] is not [a property interest protected by constitutional due process principles] unless the right to contribution has accrued, that is, once a tortfeasor has paid more than his or her share of a judgment . . . and is otherwise entitled to compensation from joint tortfeasors."); Williams v. White Mountain Constr. Co., Inc., 749 P.2d 423, 429 (Colo. 1988) (same); Snoddy v. Teepak, Inc., 556 N.E.2d at 685 (same). The Oklahoma Litigation is in its infancy and no judgment has been rendered against PWC. As a result, it appears likely that PWC's inchoate contribution right does not constitute a due process protected property right.

2.    **Applicable Statutory Provisions Provide that Good Faith Settlements Extinguish Contribution Rights.**

However, to the extent that an Oklahoma court may determine that a protected contribution right exists prior to entry of a judgment and payment, the UCATA specifically contemplates that a good faith settlement will extinguish the contribution rights of joint tortfeasors. See Okla. Stat. Ann. tit. 12, § 832(H)(2); see also Eichenholtz v. Brennan, 52 F.3d 478, 486 (3d Cir. 1995) ("Many states have enacted settlement bar statutes, which allow a bar to the right of contribution if the settlement is made in good faith and the non-settling defendants are entitled to a setoff against any judgment ultimately entered against them."). Here, the relevant statutory provision states:

> When a release, covenant not sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death . . . [i]t discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

Okla. Stat. Ann. tit. 12, § 832(H)(2).   Critically, this provision does not require notice or participation by all joint tortfeasors for a contribution bar to be effective. See id. The statute's plain language also does not distinguish between party and non-party joint tortfeasors. See id. Instead, section 832(H) provides that a good faith settlement will discharge the contribution liability of "any other tort-feasor" and Oklahoma courts have stated that "[t]he use of the word 'any' within a statute is equivalent and has the force of 'every' and 'all'." State ex rel. Porter v. Ferrell, 959 P.2d 576, 578 (Okla. 1998).   Therefore, the very source of PWC's alleged contribution rights, the UCATA, contemplates the broad extinguishment of such rights upon a

11

good faith settlement, regardless of the non-settling joint tortfeasor's status as a party to the

settled proceeding or notice thereof.[6]

To avoid potential inequity resulting from the extinguishment of contribution rights, the

UCATA contains the following setoff provision:

> [The settlement] does not discharge any other tort-feasor from
> liability for the injury or wrongful death unless the other tort-feasor
> is specifically named; but it reduces the claim against the others to
> the extent of any amount stipulated by the release or the covenant,
> or in the amount of the consideration paid for it, whichever is
> greater.

Okla. Stat. Ann. tit. 12, § 832(H)(1). Oklahoma courts have construed this provision to reduce

claims against non-settling joint tortfeasors by the full settlement amount, rather than the settling

---

[6]    Courts in similar proceedings routinely approve contribution bars.  See Troyer v. Adams,
77 P.3d 83, 116 (Haw. 2003) (collecting cases); In re Oil and Gas Litig., 967 F.2d 489, 493 n.2
(11th Cir. 1992); In re Silicone Gel Breast Implant Prods. Liab. Litig., No. CV 92-P-10000-S,
1994 WL 578353, at *18-19 (N.D. Ala. Sept. 1, 1994).  In In re Oil and Gas Litig., the court
affirmed a contribution bar order that extinguished all claims related to the settled matters against
the settling defendants by "any individual, corporation, partnership, unincorporated association,
or other type of entity, including, but not limited to any party to this litigation." 967 F.2d at 493
n.2.  The court further explained that:

> Modern    class    action    settlements    increasingly    incorporate
> settlement bar orders . . . [because] bar orders play an integral role
> in facilitating settlement. Defendants buy little peace through
> settlement unless they are assured that they will be protected
> against codefendants' efforts to shift their losses through cross-
> claims for indemnity, contribution, and other causes related to the
> underlying litigation . . . In short, settlement bar orders allow
> settling parties to put a limit on the risks of settlement.

Id. at 494.  Similarly in In re Silicone Gel Implant Litig., the court modified and approved a
settlement containing a provision that barred non-parties from suing settling defendants for
contribution, indemnity, or on similar theories. 1994 WL 578353, at *18-19.  The modifications
imposed by the court included a clarification that the non-settling parties' ability to seek setoff or
judgment reduction pursuant to applicable state law would not be affected. Id.  The court stated
that "the bar order is essential to the settlement, is fair and equitable, is supported by adequate
consideration, and is within the court's powers even though these other [third parties] have not
agreed to the order or been named in parties in the [present] action." Id.

tortfeasor's pro rata share of the injury.  <u>Price v. Sw. Bell Tele. Co.</u>, 812 P.2d 1355, 1360 (Okla. 1991).  This interpretation furthers the intent of the UCATA to encourage settlement because it "gives the plaintiff, in advance of judgment, the exact reducible amount that the plaintiff gives up in the remaining action against the nonsettling tortfeasor."  <u>Id.</u>

Here, the Settlement's Contribution Bar preserves potential contribution claimants' setoff rights, providing:

> The determination of whether any monetary award or judgment obtained in another action by the Trustee . . . from or against any third party resulting from the third party's liability as a joint tortfeasor with the Released Parties for claims arising from, related to, or in any way based upon or connected to any Released Claim, is subject to any reduction, credit or setoff as a result of the settlement in this action shall be made by the court issuing such award or judgment based on applicable law . . .

Settlement, § 7.  The Settlement explicitly recognizes that state law setoff rights may exist, but leaves the determination for the appropriate court at the proper time.  Accordingly, the Settlement is fair and equitable to PWC because it preserves and does not alter PWC's only contribution-related right, the right to setoff.  This result is not only fair and equitable, but is specifically contemplated by the UCATA.  Based on the foregoing, the Court is satisfied that the Contribution Bar may be approved without offending due process principles and should be approved.

**B.    Even if PWC's Due Process Rights Were At Issue, They Would Be Satisfied By PWC's Notice of, and Participation In, This Proceeding.**

Due process is not a rigid concept, but is "flexible and calls for such procedural protections as the particular situation demands."  <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).  Here, PWC has not contended that it did not receive adequate notice of the Settlement Motion.  Indeed, this would be a difficult position for PWC to maintain as the Debtors' filings show that

counsel to PWC was served with the Settlement Motion and PWC has actually participated in the Settlement approval process.  [See Adv. Docket Nos. 224, 226, 235.]

Instead, PWC argues that it was not sufficiently involved in the events leading up to the Settlement to satisfy its due process rights.  Due process, however, does not require that an objector be involved in, or receive notice of, settlement negotiations.  See Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 600 F.3d 135, 148 (2d Cir. 2010) (noting that due process does not require "an objector to [a settlement agreement] receive notice of the settlement negotiations before terms [a]re reached by the parties to the agreement . . . [when] [the objector] [i]s provided notice and a hearing before the settlements [a]re approved by the Bankruptcy Court.") (internal quotations and citations removed); Britz, Inc. v. Dow Chem. Co., 86 Cal. Rptr. 2d 188, 192 (Cal. Ct. App. 1999) ("The due process right to be heard is satisfied when a party is informed the matter is pending so he or she can choose whether or not to contest it.").

PWC was afforded sufficient notice of the Settlement and its terms and had an opportunity to object.  PWC took advantage of that opportunity and submitted its written Objection prior to the Settlement Motion Hearing.  PWC also presented oral argument at the Hearing and was afforded the opportunity to provide subsequent briefing on its Objection.  In these circumstances, due process does not require anything further.  In re Johns-Manville Corp., 600 F.3d at 148; See also, Troyer v. Adams, 77 P.3d at 118 (approving a settlement contribution bar and finding no due process issue when statutory provision afforded non-settling party notice and an opportunity to object).

## V.  <u>CONCLUSION</u>

Based on the foregoing, the Court will grant the Motion and overrule PWC's Objection.

Appropriate Orders follow.

Dated:  Wilmington, Delaware
       November 19, 2010

Brendan Linehan Shannon
United States Bankruptcy Judge